NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1071
_____

D.W.; A.C.,
                    Appellants

v.

SUSAN RAUFER, in her capacity as director of the Newark Asylum Office;
DIRECTOR UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES;
SECRETARY UNITED STATES DEPARTMENT OF HOMELAND SECURITY

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-19-cv-00986)
District Judge: Honorable Gerald J. Pappert
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1
on November 10, 2020

Before: HARDIMAN, GREENBERG, and SCIRICA, *Circuit Judges*

(Filed: December 22, 2020)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Appellant D.W. contends the government's denial of his asylum application was arbitrary, capricious, contrary to law, not supported by substantial evidence, and in violation of his due process rights. We disagree and will affirm the District Court's order granting summary judgment.

**I.**

D.W. is a citizen of India who resides in the United States with temporary legal status. He was born into one of the lowest castes in India's caste system—members of the lowest castes are collectively referred to as Dalits. Dalits face discrimination and violence in India, especially in rural areas, despite legal protection and affirmative action programs. D.W. applied for asylum based on past persecution suffered due to his status as a Dalit and his political opinion against casteism.

Throughout his schooling in India, D.W. was threatened and assaulted several times by upper caste members for expressing an ambition to rise above the social status the caste system established for Dalits. D.W. persisted, obtaining a degree in dental medicine and dental surgery in 2014. He then moved to the United States to pursue a master's degree in public health, which he obtained in 2015. D.W. married his wife in 2016 in the United States, without a traditional ceremony. Planning to have a traditional wedding ceremony, he traveled to India in 2017, and his wife planned to meet him there. But these plans were cancelled because D.W. decided it would not be safe to have the

ceremony when caste-related violence erupted in India and his family received a threatening letter. D.W. returned to the United States.

Shortly after returning, D.W. submitted his application for asylum. The Newark Asylum Office of the United States Citizen and Immigration Services ("USCIS") reviewed the application, interviewed D.W., and issued a notice of intent to deny the application ("NOID"). In the NOID, USCIS found that D.W. suffered past persecution, which created a presumption of a well-founded fear of future persecution. But USCIS found the presumption was rebutted because a preponderance of the evidence established that D.W. could avoid future persecution by relocating to a metropolitan area in India and that it would be reasonable for him to do so under the circumstances. To support its conclusion, USCIS cited D.W.'s education and skills, India's affirmative action program and prohibition on discrimination, and reports indicating violence against well-educated Dalits is not widespread. Further, it relied on D.W.'s recent trip to India as evidence that the past persecution he suffered was not severe enough to warrant granting asylum by an exercise of agency discretion.

D.W. submitted a response with additional evidence, consisting of 17 articles detailing violence and discrimination against Dalits in metropolitan areas in India. After considering this additional evidence and conducting further review, USCIS issued a final decision denying D.W.'s application because the evidence submitted in response did not overcome USCIS's finding that the presumption of a well-founded fear of persecution was rebutted. In its decision, USCIS cited four news articles not previously included in

the record that showed evidence of financial success and societal respect for highly educated Dalits in metropolitan areas of India.

D.W. filed suit for administrative review, contending USCIS's denial of the asylum application was arbitrary and capricious, contrary to law, not supported by substantial evidence, and issued in violation of D.W.'s due process rights. The District Court granted USCIS's motion for summary judgment. This appeal followed.

## II.[1]

D.W. contends USCIS's denial of his asylum application was unlawful because it misapplied the test for determining whether the presumption of a well-founded fear of persecution had been rebutted and it misconstrued the facts in determining the presumption was rebutted. Additionally, D.W. contends the denial of his application violated his due process rights by relying on news articles he did not have an opportunity to rebut.

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 704. We have jurisdiction under 28 U.S.C. § 1291. *See Pinho v. Gonzales*, 432 F.3d 193, 200, 204 (3d Cir. 2005).

In reviewing agency action, we do not substitute our judgment for the agency's—the arbitrary and capricious standard only requires the agency consider the relevant facts and articulate a "rational connection between the facts found and the choice made." *CBS Corp. v. F.C.C.*, 663 F.3d 122, 137 (3d Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). We review questions of law de novo, according deference, under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), where appropriate. *Huang v. Att'y Gen. of U.S.*, 620 F.3d 372, 379 (3d Cir. 2010). We review questions of fact, including whether there is a "well-founded fear of persecution," under the substantial evidence standard, which requires a decision be based on "more than a mere scintilla" of "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Doe v. Att'y Gen. of U.S.*, 956 F.3d 135, 140 (3d Cir. 2020) (quoting *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001)).

4

We agree with the court that USCIS applied the correct standard in deciding whether the presumption was rebutted and that its decision was rationally based on substantial evidence showing that D.W. could safely and reasonably relocate within India. We also agree with the court that USCIS did not violate D.W.'s due process rights.

**A.**

We begin with D.W.'s direct challenge to USCIS's legal and factual determinations. An applicant who has a well-founded fear of future persecution is eligible for asylum. *Doe v. Att'y Gen. of U.S.*, 956 F.3d 135, 141 (3d Cir. 2020). Past persecution creates a rebuttable presumption of a well-founded fear of future persecution. *Id.* The government can rebut the presumption if it proves by a preponderance of the evidence that (1) "Petitioner could escape persecution by relocating to another part of [Petitioner's country of origin]" and (2) "relocation would be reasonable." *Id.* at 150 (quoting *Leia v. Ashcroft*, 393 F.3d 427, 437 (3d Cir. 2005)). The first element, safe relocation, requires a showing that the applicant can relocate to a safe area of the country—i.e., that relocating within the country "would abate the risk of persecution." *In re M-Z-M-R-*, 26 I. & N. Dec. 28, 33 (BIA 2012) (quoting *Lukwago v. Ashcroft*, 329 F.3d 157, 181 (3d Cir. 2003)). The second element, reasonable relocation, requires a showing that, in the totality of the relevant circumstances, the applicant can reasonably be expected to relocate. *Id.* at 34–35.

D.W. challenges USCIS's legal determination about the correct rebuttable presumption test. He contends the test USCIS applied was incorrect in two ways.

First, he contends USCIS improperly put the burden on him to show relocation was unsafe and unreasonable. But instead of impermissibly placing the burden on D.W.,

5

USCIS found, in the NOID, that the government met its burden of showing relocation was safe and reasonable. The language in the final decision—that D.W.'s response to the NOID did not overcome this original finding—only reaffirms the NOID finding that the government met its burden in light of the additional materials submitted by D.W.

Second, he contends USCIS improperly considered only whether relocation would be *possible* and not whether relocation would be *reasonable*, by failing to consider all the reasonableness factors enumerated in 8 C.F.R. § 1208.13(b)(3).[2] But USCIS concluded relocation would be *reasonable* because, after considering all the evidence, D.W. did not have a well-founded fear of persecution if he relocated to a major city in India, where highly educated Dalits can achieve economic success and social respect. Further, the enumerated factors are not expressly mandatory, and the "factors may, or may not, be relevant." 8 C.F.R. § 1208.13(b)(3). USCIS considered all the relevant evidence, and it is not required to "discuss every piece of evidence mentioned by an asylum applicant." *Green v. Att'y Gen. of U.S.*, 694 F.3d 503, 509 (3d Cir. 2012) (citation omitted).

D.W. also challenges USCIS's factual determination that relocation would be safe and reasonable. He contends this determination was not based on substantial evidence because USCIS mischaracterized the record, cherry-picked facts, and impermissibly

---

[2] *See* 8 C.F.R. § 1208.13(b)(3) ("[A]djudicators should consider, but are not limited to considering, whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties. Those factors may, or may not, be relevant, depending on all the circumstances of the case, and are not necessarily determinative of whether it would be reasonable for the applicant to relocate.").

6

relied on generalized improvements. For support, D.W. points to reports and articles showing continued discrimination and violence against Dalits in India. But USCIS considered these reports and articles and concluded the violence and discrimination was not sufficiently widespread to render relocation unsafe or unreasonable. USCIS's determination that D.W. could safely and reasonably relocate was rationally based on the following substantial evidence: D.W.'s education and skills, D.W.'s recent trip to India, India's affirmative action program and prohibition on discrimination, reports indicating violence against well-educated Dalits is not widespread, and news articles showing Dalits achieving success and societal respect in metropolitan areas.

Accordingly, USCIS's decision correctly applied the rebuttable presumption test and was rationally based on substantial evidence.

**B.**

Next we turn to D.W.'s challenge to the decision based on an alleged violation of his due process rights. D.W. argues his procedural due process rights were violated when USCIS considered articles D.W. did not have an opportunity to rebut. Procedural due process is flexible to the particular situation, and in the immigration context, an applicant "(1) is entitled to 'factfinding based on a record produced before the decisionmaker and disclosed to' him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to 'an individualized determination of his [or her] interests.'" *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (alteration in original) (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001)). We conclude that D.W.'s due process rights were not violated where he had a meaningful opportunity to be heard, including an

7

opportunity to submit a rebuttal, and the relevant news articles were disclosed to D.W. with USCIS's final decision.

## III.

For the reasons stated above, we will affirm the order granting summary judgment.